527 A.2d 3

Ralph William MILLS

v.

STATE of Maryland.

Nos. 22 & 79, Sept. Term 1985.

Court of Appeals of Maryland.

June 25, 1987.

34

38

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender and George E. Burns, Jr., Asst. Public Defender, on the brief) Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

ELDRIDGE, Judge.

In March 1985 Ralph William Mills was tried for first degree murder before a jury in the Circuit Court for Allegany County. His appeal challenges the resulting conviction and death sentence. We shall affirm.

The parties have agreed pursuant to Maryland Rule 828(g) that the following facts are relevant to the disposi-

---

* Smith and Couch, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

tion of this appeal. Mills shared cell number 20 on "G–One" tier at the Maryland Correctional Institution in Hagerstown with Paul Robin Brown. At 10:47 p.m. on August 6, 1984, correctional officers were called to the cell to investigate a disturbance. When the officers arrived, Mills demanded to be released from his cell, saying, "my cell buddy is dead." The cell door was opened and Mills emerged, carrying a blood-covered "shank," or home-made knife, at his side. Mills stated several times that he had "killed his cell buddy." Brown's body was found lying on his bunk, stabbed six times in the chest and thirty-nine times in the back.

About three weeks before this homicide, Mills had written to the warden, threatening to kill his cell mate (who at that time was not Paul Robin Brown) if certain complaints, primarily concerning visitation, were not satisfactorily resolved. At the trial another inmate, David Gallahan, testified for the defense that Brown had lent him the murder weapon prior to the homicide, and had asked for and received it back on the day of the incident.

Mills presents us with numerous questions for review, some relating to the guilty verdict and some relating just to the sentence of death.

## I.

The first two questions presented concern the denial of Mills's motions to strike two prospective jurors for cause. Mills's counsel conceded in this Court that Mills had exercised only sixteen of his allotted twenty peremptory challenges.[1] Neither of the prospective jurors whom Mills moved to strike for cause was impanelled to serve as a juror or to serve as an alternate.

---

1. Maryland Rule 4–313(a) provides that defendants in cases such as this are permitted twenty peremptory challenges plus two additional peremptory challenges for each alternate juror.

**40**

■ Assuming for purposes of argument that the trial judge should have dismissed the two veniremen for cause, it is difficult to understand how his failure to do so could have prejudiced Mills when the defendant's peremptory challenges were not exhausted and the two veniremen were not seated. We have previously stated that when an accused has not exhausted his peremptory strikes, failure to disqualify a prospective juror for cause is not reversible error. *White v. State,* 300 Md. 719, 728, 481 A.2d 201 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985). *See Booth v. State,* 306 Md. 172, 185, 507 A.2d 1098 (1986), *vacated on other grounds,* ── U.S. ──, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).

We have also repeatedly held that a claim of error in the inclusion or exclusion of a prospective juror is ordinarily abandoned when the defendant or his counsel indicates satisfaction with the jury at the conclusion of the jury selection process. *Booth v. State, supra,* 306 Md. at 185, 507 A.2d 1098; *Foster v. State,* 304 Md. 439, 450–451, 499 A.2d 1236 (1985), *cert. denied,* ── U.S. ──, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Thomas v. State,* 301 Md. 294, 310, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *White v. State, supra,* 300 Md. at 729, 731, 481 A.2d 201; *Calhoun v. State,* 297 Md. 563, 579–580, 468 A.2d 45, 52 (1983); *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984). In this case, after the voir dire and peremptory strikes, the defense was asked if the jury panel was acceptable to the defendant. After checking the identity of one juror, defense counsel stated: "Your Honor, the Jury as impaneled is acceptable to the Defense." Under these circumstances it would be idle for us to consider whether or not the trial court should have struck the two veniremen for cause.

## II.

Mills contends that the trial court should not have admitted into evidence two color photographs of the victim, showing his stab wounds and blood.

At trial this issue developed as follows. The first photograph admitted into evidence (State's Exhibit 3) was a color photograph of the prison cell wall above the victim's bunk. The photograph depicts three words fingerpainted in blood as well as a portion of the victim's body. Counsel for the defendant objected that the photograph "[s]hows some bias being a color photograph like it is," and argued that the State should produce a black and white photograph. The trial judge asked: "You concede that the fact that it's color doesn't automatically exclude it?" Counsel for the defendant responded, "I agree." The judge then ruled that if the State could establish that the colors were accurate, the photograph would be admitted into evidence, and afterwards it was so admitted.

The next photographs in evidence (State's Exhibits Nos. 5, 6, 7, 8, 9, 10) were admitted one after another, and resembled the first photograph in size, and coloration. Exhibit 5 depicted the feet of the victim, in socks; no blood was apparent. There was no objection to Exhibit 5 from defense counsel. Exhibit 6 showed the toilet in Mills's cell as it appeared when the homicide was first investigated, with red stained pieces of white cloth or paper visible in the toilet bowl. Defense counsel objected to Exhibit 6. Exhibit 7 showed a corner of the cell, including the window, a cabinet, some clothes drying from a string, and the hand of the victim. No objection was made to the admission of this photograph. Exhibit 8 showed the back of the victim with blood draining from stabbings scattered from the shoulders to the waist level. Defense counsel objected to the admission of Exhibit 8. Exhibit 9 showed the face and chest of the victim, with blood draining from wounds, and there was no objection to this photograph. Exhibit 10 showed the victim lying face up on his bunk and showed part of the wall containing three words fingerpainted in blood. Blood could be seen, but not specific wounds. There was no objection with respect to Exhibit 10.

The trial court admitted Exhibits 5, 7, 9 and 10 into evidence, there being no objection to them. The court

postponed consideration of Exhibits 6 and 8, which were objected to, until after the completion of the testimony of the witness who identified and vouched for the accuracy of all six photographs. With the jury excused from the courtroom, the court turned to the two challenged photographs. Mills moved to exclude the photograph of the toilet (Exhibit 6) and the photograph of the victim's back (Exhibit 8), arguing that the photographs would needlessly prejudice the jury, as the pictures reflected facts which were not disputed and which, it was claimed, could have been easily established by testimony and less vivid photographs.

The State pointed to testimony that all of the photographs were fair and accurate. With respect to the picture of the toilet, the State contended that it would not "unduly inflame" the jurors and that its probative value outweighed its prejudicial value. As to the picture of the victim's back wounds, the State argued that it "completes the picture" by showing to the jury wounds not visible in the previously admitted pictures of the victim lying face up, and that it was the only photograph of the back wounds.

The trial judge admitted the challenged photographs, ruling as follows:

"Well, the purpose of the ... introduction of photographic evidence is to enable the side which offers it to offer probative evidence to the triers of fact, to the jurors. I know of no rule of evidence that requires me to guard the sensibilities of jurors whether we know what they are or not. I think the issue is whether or not that photograph would tend to inflame the jurors to in any way provide an exhibit or a bit of evidence in a sensational way. I think if the State sought to introduce eight photographs taken from slightly different angles, or to a series of photographs one of each area where there's a wound, then yes I think it would be potentially inflammatory. But to offer one single photograph of the ... [victim] as he was found, be it in color or black and white, I don't think is unduly prejudicial and designed to inflame, and I don't think it will inflame.

"I'll overrule the objection and permit all the exhibits to come in."

On appeal, Mills contends: "Over objection, the trial court admitted State's Exhibits Eight and Nine." (Brief, p. 12). The actual objection was, "We would object to the No. 8 [the back wounds], Your Honor, along with No. 6 [the toilet bowl]. As to the others we have no objection." Accordingly, the present contention of error in the admission of the State's Exhibit 9, showing the face and chest of the victim, was clearly waived. *See* Rule 4–322. Moreover, even if No. 9 had been objected to, it is much less bloody and had much less potential for prejudice than No. 8. As we shall conclude that the admission of No. 8 furnishes no ground for reversal, the same conclusion is applicable to the admission of No. 9.

Mills and the State agree that the admissibility of photographs turns upon a balancing of their probative value against their potential for prejudice, and that the application of this test is a matter committed to the discretion of the trial judge. *See, e.g., State v. Tichnell,* 306 Md. 428, 463, 509 A.2d 1179 (1986); *Grandison v. State,* 305 Md. 685, 729, 506 A.2d 580, *cert. denied,* –––– U.S. ––––, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986); *Reid v. State,* 305 Md. 9, 20, 501 A.2d 436 (1985); *Johnson v. State,* 303 Md. 487, 502–504, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986), and cases there cited. The standard was set forth in *Johnson v. State, supra,* where this Court found no error in the admission of a color photograph and black and white photographs of a homicide victim. We there stated as follows (303 Md. at 502, 495 A.2d 1):

"We have consistently held that whether or not a photograph is of practical value in a case and admissible at trial is a matter best left to the sound discretion of the trial judge. *Bowers v. State,* 298 Md. 115, 135–36, 468 A.2d 101, 111–12 (1983), quoting *Cook v. State,* 225 Md. 603, 608, 171 A.2d 460, 463 (1961), *cert. denied,* 368 U.S. 970, 82 S.Ct. 445, 7 L.Ed.2d 398 (1962). A court's determination in this area will not be disturbed unless plainly

arbitrary. *Id.* Under this standard, we have permitted the reception into evidence of photographs depicting the condition of the victim and the location of injuries upon the deceased, *Clarke v. State*, 238 Md. 11, 21–22, 207 A.2d 456, 461–62 (1965); the position of the victim's body at the murder site, *Brice v. State*, 264 Md. 352, 368–69, 286 A.2d 132, 140 (1972); and the wounds of the victim, *Madison v. State*, 200 Md. 1, 7–8, 87 A.2d 593, 595 (1952). On certain occasions, photographs have also been admitted to allow the jury to visualize the atrociousness of the crime—a circumstance of much import where the fact-finder must determine the degree of murder. *See Fuller v. State*, 45 Md.App. 414, 420–21, 413 A.2d 277, 280–81 (1980).

* * * * * *

We have previously held that photographs of the deceased are admissible even where the location of injuries was previously described and conceded by the defendant. *Smith v. State*, 182 Md. 176, 187, 32 A.2d 863, 867 (1943); *Snowden v. State*, 133 Md. 624, 631, 106 A. 5, 8 (1919). The Court reasoned that since the photographs were mere representations of what was already in evidence, their introduction could not be held to have injured the accused. *Smith*, 182 Md. at 187, 32 A.2d at 867."

Mills contends that "the more shocking the photo, the more important must be its contribution to the case in order for admission to be justified." (Brief, p. 13). He argues that Exhibit 8 added nothing of substance to the State's case, because the medical examiner and other witnesses testified as to the stabbings and because this testimony was never controverted. The State responds that any prejudice caused by the photograph was justified by its probative value on the issues of premeditation and provocation.

We are unable to conclude that Exhibit 8 was likely to so distort the jury's deliberations that its admission was "plainly arbitrary," *Johnson, supra,* 303 Md. at 502, 495 A.2d 1. When the State sought to admit the photograph, no

stipulation had been offered that the victim had been stabbed six times in the chest and thirty-nine times in the back. Mills does not contend that the photograph in any way misrepresented facts. We have examined Exhibit No. 8 and do not find it particularly gory or gruesome. Compare the photograph at issue in *Smith v. State*, 182 Md. 176, 187, 32 A.2d 863, 867 (1943) (upholding the admission of a photograph showing the victim's body partially exhumed one week after fatal axe blows to the head, even though the facts represented were already in evidence without objection and were not disputed).

 In this Court, Mills also contends that the trial judge should not have allowed Exhibits 8 and 9 to be reintroduced in evidence at the sentencing proceeding. Before the jury was returned for this phase of the trial, the State announced that it would move to reintroduce all trial testimony and exhibits. Counsel for defendant made sure that two exhibits marked for identification but not introduced would be kept from the jury, but, when asked by the court if he had any objection to the reintroduction' of the trial exhibits and documents, counsel replied: "No, Your Honor." Mills has obviously waived the point. Rule 4–322(a).

### III.

Next, Mills argues that the trial court erred in excluding evidence of the victim's character and reputation.

As we recently pointed out in *Mack v. State*, 300 Md. 583, 603–604, 479 A.2d 1344 (1985), whether the exclusion of evidence constituted reversible error is ordinarily not preserved for review "unless there has been a formal proffer of what the contents and relevance of the excluded testimony would have been." *See Peregoy v. Western Md. R.R. Co.*, 202 Md. 203, 209, 95 A.2d 867 (1953). The record shows that no such proffer was made in this case.

 Conceding the absence of a proffer, Mills surmises on appeal that trial counsel made "an apparent effort to establish that Brown was the aggressor in the altercation

with appellant" and "sought to elicit evidence that Brown had both assaultive and homosexual tendencies" of the sort that "could well have led the jury to believe that appellant's act was not premeditated and unprovoked." (Brief, pp. 15, 17, 18). Even now, however, Mills does not contend that *any* of the witnesses would have testified that Mills struck at Brown in self defense or retaliation because of homosexual advances. We are left with appellate counsel's mere speculation in his brief that "some aspect of the victim's character and personality led to his demise." (*Id.*, p. 20).[2] Something more than this type of vague speculation is required before we can conclude that the trial judge erred in excluding the evidence.

The principle that ordinarily the record must contain a "proffer to show precisely what the testimony, if admitted, would have established," does have an exception "where the tenor of the questions and the replies they were designed to elicit is clear," *Peregoy v. Western Md. R.R. Co., supra,* 202 Md. at 209, 95 A.2d 867. In the instant case, it is far from clear that anything relevant might have been established by defense counsel's questions at trial concerning the victim's character.

Moreover, appellate counsel's speculation in this Court that the homicide might have been in self defense or in retaliation for a homosexual advance, in addition to not being reflected in a proffer or the tenor of the questions, is squarely contrary to all of the evidence. Before the killing Mills wrote to the Warden threatening to kill his cell mate if his visitation privileges were curtailed. Some weeks later Mills took his cell mate's "shank," put on a glove to improve his grip, and stabbed the cell mate forty-five times on his chest and back as he lay on his bunk. The cell showed no sign of any struggle. Before being let out of the cell, Mills

---

2. With regard to the evidentiary foundation which must be laid before evidence of a victim's character is admissible to support a claim of self defense, *see Thomas v. State,* 301 Md. 294, 306–307, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1856, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985).

fingerpainted the words "Helter Skelter's Son" in blood on the cell wall. On being let out, Mills told the guards that he killed his cell mate. In the absence of a proffer, it would appear beyond doubt that Paul Brown's character was irrelevant and that testimony on this subject was properly excluded.

## IV.

The defendant Mills also argues that the trial judge erred in sustaining objections to certain questions which defense counsel asked the witness James Mills, who was the defendant's uncle and was a fellow inmate. The record on this point reads as follows:

"Q Well first before I get into that let me ask you something else. You indicated that you saw Mr. Mills on the tier on an almost daily basis?

"A Yes.

"Q How would you characterize his conduct in the institution?

"PROSECUTING ATTORNEY: Objection.

"BY THE COURT: Objection sustained.

"Q During the time that you were on G cell with Mr. Mills, do you know whether or not he had any trouble with the guards or other inmates?

"PROSECUTING ATTORNEY: Objection.

"A None at all.

"BY THE COURT: Just a minute, Mr. Mills. When you hear an objection, please don't answer the question.

"Objection sustained.

"Q Did you ever personally see any altercation with Ralph Mills between Ralph Mills and any of the guards?

"PROSECUTING ATTORNEY: Objection.

"BY THE COURT: Objection sustained.

"Q Did you ever personally see any altercation between Ralph Mills and any of the other inmates?

"PROSECUTING ATTORNEY: Objection.

"BY THE COURT: Objection sustained."

The defendant asserts in this Court that the purpose of the questions was to elicit evidence concerning the defendant's nonviolent character and reputation. *See* Maryland Code (1974, 1984 Repl. Vol.), § 9–115 of the Courts and Judicial Proceedings Article, allowing a witness to give his personal opinion of another person's character where character evidence is relevant;[3] *Durkin v. State,* 284 Md. 445, 397 A.2d 600 (1979). *See also Poole v. State,* 295 Md. 167, 181, 453 A.2d 1218 (1983); *Comi v. State,* 202 Md. 472, 478–479, 97 A.2d 129, *cert. denied,* 346 U.S. 898, 74 S.Ct. 223, 98 L.Ed. 399 (1953). The defendant, however, frankly acknowledges that the above questions were "not couched ... in ... terms ... [of] the character and reputation of Appellant for violence." (Brief, p. 22).

■ As the questions were not worded in terms of character evidence, as the witness was not asked to give an opinion concerning the defendant's character or reputation, and as there was no proffer or explanation given to the trial judge by defense counsel, we cannot conclude that the trial judge committed error in sustaining the objections.

■ Furthermore, even if it be assumed arguendo that the trial court did err in sustaining the objections, such error would be harmless. In light of the overwhelming evidence of the defendant's guilt and the nature of his crime, it is virtually inconceivable that the view of a fellow inmate, who was the defendant's uncle, that the defendant has previously been nonviolent in the institution, might have changed the guilty verdict. We are convinced, "be-

---

3. Section 9–115 states as follows:

"Where character evidence is otherwise relevant to the proceeding, no person offered as a character witness who has an adequate basis for forming an opinion as to another person's character shall hereafter be excluded from giving evidence based on personal opinion to prove character, either in person or by deposition, in any suit, action or proceeding, civil or criminal, in any court or before any judge, or jury of the State."

yond a reasonable doubt, that the error in no way influenced the verdict," *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976). "[T]here is no reasonable possibility that the [exclusion of the] evidence . . . may have contributed to the rendition of the guilty verdict." *Ibid.*

## V.

■ Mills's next contention is that the trial court erred in denying his motion to impanel separate juries for the guilt or innocence phase and the penalty phase of his trial. Mills's argument is identical to that rejected by the Supreme Court in *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), and rejected by this Court in several cases. *See State v. Tichnell, supra,* 306 Md. at 458, 509 A.2d 1179; *Booth v. State, supra,* 306 Md. at 192; *Evans v. State,* 304 Md. 487, 522, 499 A.2d 1261 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986); *Foster v. State, supra,* 304 Md. at 453–466, 499 A.2d 1236. These cases are dispositive of the issue.

## VI.

### A.

The defendant's principal argument is that the Maryland capital punishment statute, as applied, is unconstitutionally mandatory. Mills's analysis begins with Code (1957, 1982 Repl. Vol.), Art. 27, § 413(h)(2), which provides as follows:

> "If it [the court or jury] finds that the mitigating circumstances do not outweigh the aggravating circumstances, the sentence shall be death."

Former Maryland Rule 772A, in effect at the time of the defendant's trial, implemented the statutory provision by giving the jury a form to fill out. The instructions on the form told the jury that if one or more aggravating circumstances were present, and if no mitigating circumstances were found, the jury should enter "Death" on the part of the form for the sentence. In the present case, the jury found that one aggravating factor had been established,

**50**

namely that Mills was an inmate in a correctional institution at the time he committed the murder. The jury found no mitigating circumstance, and it determined that the sentence should be death.

Relying primarily on *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), Mills maintains that "any statutory scheme which requires the return of a death sentence without providing the sentencer with an option to impose a life sentence is invalid." (Brief, p. 47). In this case, according to Mills, once the jury found one aggravating circumstance and no mitigating circumstances, the statute required the jury to return a sentence of death. Mills suggests that, although no mitigating factors were found, "there is nothing in the record to indicate that had the jurors been given a choice, any one of them would have considered the ultimate sanction appropriate." (*Ibid.*). Because, in the defendant's view, the Maryland statute may mandate a death sentence under circumstances where the sentencing authority is not convinced that death is the appropriate punishment, it is claimed that the statute violates the Eighth and Fourteenth Amendments.

■ This Court has rejected arguments like that set forth above on several occasions. *See, e.g., State v. Tichnell, supra,* 306 Md. at 467–468, 509 A.2d 1179; *Booth v. State, supra,* 306 Md. at 224, 507 A.2d 1098; *Huffington v. State,* 304 Md. 559, 587, 500 A.2d 272 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3315, 92 L.Ed.2d 745 (1986); *Foster v. State, supra,* 304 Md. at 473–475, 499 A.2d 1236; *Calhoun v. State, supra,* 297 Md. at 637, 468 A.2d 45; *Tichnell v. State,* 287 Md. 695, 728, 415 A.2d 830 (1980). We have held that the Maryland capital punishment statute does not require the death sentence if the jury believes death to be inappropriate and that it is not a mandatory death penalty statute. As explained in the *Foster* case (304 Md. at 474–475, 499 A.2d 1236),

"§ 413(g)(8) includes as mitigating circumstances '[a]ny other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case.' We held in *Tichnell I* that, because of this provision, the Maryland statute 'is not a mandatory death penalty statute,' and satisfies the standards of *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). 287 Md. at 728, 415 A.2d 830. We reiterated this holding in *Calhoun,* pointing out that under the Maryland statute 'the sentencing authority may articulate *any factor* it finds in mitigation.' 297 Md. at 637, 468 A.2d 45.

"Therefore, the defendant erroneously argues that 'if the defendant fails to meet his burden of proof and persuasion' concerning mitigating circumstances, death 'may be mandated where the sentencer is unconvinced that death is the appropriate punishment.' ... A sentencing authority, unconvinced that death is appropriate, may list as a mitigating circumstance whatever factor or factors may have led to this conclusion, irrespective of what the defendant produced or argued. If the sentencing authority perceives anything relating to the defendant or the crime which causes it to believe that death may not be appropriate, it may treat such factor as a mitigating circumstance and decide that it outweighs the aggravating circumstances."

The defendant Mills responds by indicating that the above-quoted holding may be accurate if all twelve jurors can agree upon the same mitigating factor and can agree that it outweighs the aggravating factor. (Reply brief, p. 16). Mills asserts, however, that "[t]he defense adduced evidence of a number of such [mitigating] factors, and individual jurors may well have been persuaded of their existence. Again, any number of jurors may have concluded ... that the mitigating factors outweighed the aggravating.... Nevertheless, the mechanical operation of the statutory scheme permitted no choice—the jurors were required

to return a death sentence whether they believed it justified ... or not." (*Ibid.*).

Under the defendant's construction of the statute, unless all twelve jurors can agree that some mitigating factor or factors exist, and further, unless all twelve jurors can agree on the existence of the *same* mitigating factor or factors, the jury must conclude that there are no mitigating factors and that, if an aggravating circumstance has been found, the sentence must be death. Additionally, according to the defendant, all twelve jurors must agree that the same mitigating factor or factors outweigh the aggravating circumstances in order for the penalty to be other than death.[4] For example, under Mills's view, in a hypothetical case six jurors might believe that the accused was of "youthful age," that this factor outweighed the aggravating circumstances found, but that there were no other mitigating factors. Six other jurors might disagree concerning youthful age but might believe that the accused suffered from an unfortunate childhood, that this was a mitigating factor, and that it outweighed the aggravating factors. Yet because it could not *unanimously* mark "yes" to any one mitigating circumstance, according to Mills's theory the jury would be required to find that no mitigating circumstance existed and, therefore, would be required to return a sentence of death.

Like other challenges to the validity of the Maryland death penalty statute that have been made,[5] the defendant's argument is premised upon an erroneous construction of the statute.

Nothing in the pertinent language of the death penalty statute purports to abolish the traditional common law and Maryland requirement that, absent waiver, jury determinations of critical issues must be unanimous. This require-

---

4. While raised in the briefs, this contention by the defendant was developed more extensively during oral argument before this Court.

5. *See, e.g., Foster v. State, supra,* 304 Md. at 471–480, 499 A.2d 1236.

ment of unanimity generally extends to all matters submitted to the jury; it applies to the entire jury determination. As stated by this Court long ago, a " 'verdict is the *unanimous* decision made by the jury . . . on the matters lawfully submitted to [it] in the course of the trial.' *Unanimity* is indispensable to the sufficiency of the verdict. . . ." *Ford v. The State*, 12 Md. 514, 549 (1859) (emphasis in original).[6] The Maryland death penalty statute refers to "the jury" as a single entity, making its findings and determinations concerning the presence or absence of aggravating circumstances, the existence of mitigating circumstances, and the weighing of one set against the other. Art. 27, § 413, subsections (d), (f), (g) and (h).[7] The jury is

---

6. *See, generally, e.g.,* Articles 5 and 21 of the Maryland Declaration of Rights; *Smith v. State*, 299 Md. 158, 163–166, 472 A.2d 988 (1984); *State v. McKay*, 280 Md. 558, 561–562, 566–574, 375 A.2d 228 (1977); *Coby v. State*, 225 Md. 293, 297–299, 170 A.2d 199 (1961); 2 Poe, *Pleading and Practice* § 333 (1925 ed.).

7. These provisions, in relevant part, are as follows:
 "(d) *Consideration of aggravating circumstances.*—In determining the sentence, the court or jury, as the case may be, shall first consider whether, beyond a reasonable doubt, any of the following aggravating circumstances exist:
 \* \* \* \* \* \*
 "(f) *Finding that no aggravating circumstances exist.*—If the court or jury does not find, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall state that conclusion in writing, and the sentence shall be imprisonment for life.
 "(g) *Consideration of mitigating circumstances.*--If the court or jury finds, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall then consider whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist:
 \* \* \* \* \* \*
 "(h) *Weighing mitigating and aggravating circumstances.*—(1) If the court or jury finds that one or more of these mitigating circumstances exist, it shall determine whether, by a preponderance of the evidence, the mitigating circumstances outweigh the aggravating circumstances.
 "(2) If it finds that the mitigating circumstances do not outweigh the aggravating circumstances, the sentence shall be death.
 "(3) If it finds that the mitigating circumstances outweigh the aggravating circumstances, the sentence shall be imprisonment for life."

required to set forth its decisions on these matters on a form which, while relating to the sentence, is essentially a verdict sheet.[8] The death penalty statute expressly reflects the traditional requirement of unanimity, as it provides in § 413(i) as follows (emphasis added):

"(i) *Determination to be written and unanimous.* —The determination of the court or jury shall be in writing, and, if a jury, *shall be unanimous* and shall be signed by the foreman."

*See Harris v. State,* 295 Md. 329, 339–340, 455 A.2d 979 (1983).

■ Consequently, the defendant Mills correctly argues that for the jury *to determine* that the sentence is to be *life* imprisonment, the decision that there are mitigating circumstances not outweighed by aggravating circumstances must be arrived at unanimously. Because of the same statutory requirement of unanimity, however, for the jury *to determine* that the sentence is to be *death,* the decision that there exists at least one aggravating circumstance which outweighs whatever mitigating circumstances may exist must also be arrived at unanimously. There is utterly no basis in the statutory language or in logic for Mills's conclusion that whenever the jurors cannot unanimously agree on the same mitigating circumstance or circumstances, the result will always be a sentence of death. As long as one juror believes that there exists a mitigating factor, and that this factor is not outweighed by the aggravating circumstances, and if such juror continues to adhere to his or her position, the sentence will not be death under the statutory scheme. It is true that, if there is ultimate disagreement among the jurors, there may be no *jury* determination of a life sentence. In this situation, however, there will also be no jury determination of a death sentence. Instead, the sentence will be life imprisonment under Art. 27, § 413(k)(2), which states:

---

**8.** *See* former Rule 772A, which governed the instant capital sentencing proceeding.

"(2) If the jury, within a reasonable time, is not able to agree as to sentence, the court shall dismiss the jury and impose a sentence of imprisonment for life."

Thus, in the hypothetical case described earlier, where six jurors found the existence of the statutory mitigating factor of youthful age and believed that it was not outweighed by aggravating circumstances, but found no other mitigating factors, while the other six jurors refused to find the existence of youthful age but found the existence of a different mitigating factor, the jury as a single entity would not be able to indicate on the sentencing form that any particular mitigating factor existed because of the lack of unanimity among jurors. But, contrary to the defendant's argument, the same lack of unanimity would preclude the jury from indicating that no mitigating factors were present. And, as long as at least one of the jurors adhered to the view that there was a mitigating circumstance not outweighed by the aggravating circumstances, the sentence would ultimately be life imprisonment. Even if the other eleven jurors became convinced that there were no mitigating factors, it would nevertheless be improper for the jury to decide that no mitigating factors exist and that the sentence should be death. This would be "majority rule," contrary to the traditional Maryland requirement of jury unanimity which is expressly embodied in § 413(i) of the Maryland death penalty statute.

To reiterate, as long as one juror perceives any factor relating to the crime or the defendant which he regards as a mitigating factor and which he believes is not outweighed by the aggravating circumstances, the jury will not be able to determine that the sentence shall be death. Moreover, as pointed out repeatedly in our cases, if a juror does not believe that death is the appropriate punishment, whatever factor relating to the crime or the defendant that led to such belief may be regarded by that juror as a mitigating circumstance not outweighed by aggravating circumstances. Assuming that such juror does not change his mind after jury deliberations for a reasonable time, the

## 56

sentence in the case will be life imprisonment under § 413(k)(2).

While no issue has been raised by the defendant Mills concerning the sentencing form or the jury instructions in this regard, it is noteworthy that both the form and the instructions were entirely in accord with the requirement that the critical jury determinations be reached by the unanimous vote of the jurors. The sentencing form, with the jury's answers, was in part as follows (emphasis added):

"Based upon the evidence we unanimously find that each of the following aggravating circumstances which is marked 'yes' has been proven BEYOND A REASONABLE DOUBT and each aggravating circumstance which is marked 'no' has not been proven BEYOND A REASONABLE DOUBT:

"1. The victim was a law enforcement officer who was murdered while in the performance of his duties.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"2. The defendant committed the murder at a time when he was confined in a correctional institution.

$$\frac{\text{X}}{\text{yes}} \quad \frac{\phantom{no}}{\text{no}}$$

\* \* \*

"10. The Defendant committed the murder while committing or attempting to commit robbery, arson or rape or sexual offense in the first degree.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"(If one or more of the above are marked 'yes', complete Section II. If all of the above are marked 'no', do not complete Sections II and III.)

### "SECTION II

"Based upon the evidence *we unanimously find that* each of the following mitigating circumstances which is marked 'yes' has been proven to exist by A PREPONDERANCE OF THE EVIDENCE and *each mitigating circumstance marked 'no' has not been proven* by A PREPONDERANCE OF THE EVIDENCE:

"1. The defendant previously (i) has not been found guilty of a crime of violence; and (ii) has not entered a plea of guilty or nolo contendere to a charge of a crime of violence; and (iii) has not been granted probation on stay or entry of judgment pursuant to a charge or a crime of violence. As used in this paragraph, 'crime of violence' means abduction, arson, escape, kidnapping, manslaughter, except involuntary manslaughter, mayhem, murder, robbery, or rape or sexual offense in the first or

second degree, or an attempt to commit any of these offenses, or the use of a handgun in the commission of a felony or another crime of violence.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"2. The victim was a participant in the defendant's conduct or consented to the act which caused the victim's death.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"3. The defendant acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"4. The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder or emotional disturbance.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}} \quad .$$

"5. The youthful age of the defendant at the time of the crime.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"6. The act of the defendant was not the sole proximate cause of the victim's death.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"7. It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society.

$$\frac{\phantom{yes}}{\text{yes}} \quad \frac{\text{X}}{\text{no}}$$

"8. Other mitigating circumstances exist, as set forth below:

None

(Use reverse side if necessary)

\* \* \*

"We *unanimously* determine the sentence to be ___Death___ .
[Signatures of all twelve jurors]"

**58**

█ It is clear that the form required the jurors to agree unanimously that there were no mitigating factors in order for the jury to mark "no" with respect to all statutory or other possible mitigating factors. Despite the suggestion to the contrary in the dissenting opinion, there is no ambiguity in the language of Section II concerning unanimity. The words are: "we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist ... and each mitigating circumstance marked 'no' has not been proven...." In addition to the clause referring to each mitigating circumstance marked "yes," the clause referring to each mitigating circumstance marked "no" is also the object of "we unanimously find that." The sentencing form or "verdict sheet," as completed in this case, demonstrates that not a single juror found the existence of any mitigating circumstance.

The trial judge's instructions in the present case similarly emphasized that jury determinations must be unanimous. After the court clerk handed the jurors copies of the sentencing form, the trial judge instructed the panel as follows: "Let me remind you that in reaching your determination as to any of the issues raised by the case and presented to you on this sentencing form your verdict must be unanimous; that is, all twelve of you must agree." When the trial judge explained mitigating circumstances to the jury, he said: "Again I stress that your finding as to mitigating circumstances must be unanimous, that is you must all agree." At the end of his instructions the judge said: "Again let me remind you of ... the requirement that your verdict or your decision with regard to any of these items must be unanimous." After closing arguments, just before the jury retired to deliberate, the judge added: "Let me remind you that ... as you consider each of the circumstances you must indicate *yes or no*, however your *unanimous* decision falls. You must indicate either yes or no as to each of those circumstances." (Emphasis added). The

jury was fully instructed that it must be unanimous in finding that no mitigating circumstances existed. In light of the verdict sheet and the trial judge's instructions, there is no basis for Mills's speculation that some of the jurors might have believed that some mitigating factors existed.

Finally, we are aware of no Maryland authority which would support the apparent view of the defendant and of Judge McAuliffe that, if jurors are unable to agree unanimously in favor of one party or one side of an issue submitted, but remain in disagreement, the result is somehow a verdict or determination in favor of the other party or the other side of the issue. Judge McAuliffe suggests in his dissenting opinion that when a jury is asked if a particular circumstance exists or has been proven, unanimity is required for the jury to answer the question in the affirmative but not in the negative. The dissent states that "[i]f one juror believes it has been so proven, but eleven do not the jury answers 'no' to the question...." This is not, however, how the jury system and the burden of proof traditionally function.

For example, in many ordinary tort cases, the only disputed issue is whether the plaintiff has met the burden of proving that the defendant was negligent. The ultimate question regarding liability presented to the jury is: "has it been proven that the defendant was negligent?" If all twelve jurors agree that the plaintiff has proven negligence, there will be a verdict for the plaintiff. If all twelve jurors believe that the plaintiff has failed to prove negligence, there will be a verdict for the defendant. But, any other alignment will result in a hung jury. Thus, if one juror believes that the plaintiff has proven that the defendant was negligent, and if eleven jurors believe that the plaintiff has failed to prove negligence, the result is not a verdict for the defendant. In this situation, the jury is unable to answer the question "was the defendant negligent?" The fact that the plaintiff has the burden of proof does not result in some form of majority or plurality rule. Rather,

the burden of proof operates with respect to each juror individually.

The same is true in a criminal case. As previously pointed out, the jurors must be unanimous one way or the other on all issues submitted, *Ford v. The State, supra,* 12 Md. at 549. If one juror believes that the State has met its burden of proving the defendant's guilt, but the other eleven jurors are not convinced beyond a reasonable doubt of guilt, the result is not an acquittal but a hung jury. Otherwise, there would be no need for modified *Allen*-type instructions to jurors who are unable to reach unanimous agreement. *See, e.g., Mayfield v. State,* 302 Md. 624, 490 A.2d 687 (1985); *Goodmuth v. State,* 302 Md. 613, 490 A.2d 682 (1985); *Burnette v. State,* 280 Md. 88, 371 A.2d 663 (1977); *Kelly v. State,* 270 Md. 139, 310 A.2d 538 (1973).

The dissenting opinion, at another point, seems to agree that the jury's "determination of any *ultimate issue* essential to the verdict must be unanimous." The dissent goes on to state, however, that "where alternative findings of historic facts are advanced in support of a single conclusion the better rule is that the jurors need not agree on any single alternative fact provided they all agree on some alternative fact that leads them to a single conclusion on the ultimate issue." We shall assume that this is the "better rule" with regard to alternate findings of historical facts in support of a single conclusion. Nevertheless, the presence *or absence* of aggravating and mitigating circumstances, and the weighing of aggravating against mitigating circumstances, all fall into the category of "ultimate issues." The General Assembly by statute has made them the critical issues to be submitted to and determined by the capital sentencing jury. Not only are they "ultimate issues essential to the verdict," but, under the statute and rule, the jury's determinations of the presence or absence of aggravating and mitigating circumstances constitute part of the "verdict" itself. As such, unanimity is contemplated under Maryland law. Art. 27, § 413(i); *Smith v. State,* 299 Md.

158, 163–166, 472 A.2d 988 (1984); *Ford v. The State, supra,* 12 Md. at 549.

The defendant Mills's contention, concerning the effect of juror disagreement on an issue, is also contrary to the position taken generally throughout the country. The cases regularly point out that unanimity is required for a jury determination on either side of an issue, that the burden and standard of proof operate upon each juror individually and not upon the jury collectively on a majority basis, and that the failure to achieve unanimity on either side of an issue ordinarily results in a hung jury. *See generally, e.g., Bolt v. State,* 29 Ala.App. 152, 193 So. 560 (1940); *Brown v. State,* 369 A.2d 682, 684 (Del.1976); *Castle v. The State,* 75 Ind. 146 (1881); *Stitz v. The State,* 104 Ind. 359, 362–363, 4 N.E. 145 (1885); *Garden v. Moore,* 174 Iowa 376, 156 N.W. 410, 411 (1916); *The State v. Stewart,* 52 Iowa 284, 286–287, 3 N.W. 99 (1879); *Easter v. State,* 191 Miss. 651, 4 So.2d 227, 137 A.L.R. 391 (1941); *Commonwealth v. Witt,* 93 Pa.Super. 446, 448–449 (1928); *State v. Harris,* 89 R.I. 202, 206–207, 152 A.2d 106 (1959); *Casstevens v. Texas & P. Ry. Co.,* 119 Tex. 456, 32 S.W.2d 637, 638 (1930); *State v. Wisman,* 94 W.Va. 224, 118 S.E. 139, 141 (1923); *State v. McCausland,* 82 W.Va. 525, 96 S.E. 938, 941 (1918); Anno., *Reasonable Doubt of Individual Juror,* 137 A.L.R. 394 (1942); 1 *Underhill's Criminal Evidence,* § 30 (6th ed.); 1 *Wharton's Criminal Evidence* § 11 (13th ed.).

This principle of unanimity has specifically been applied to jury determinations of the penalty in capital cases. Thus, in *Andres v. United States,* 333 U.S. 740, 746–749, 68 S.Ct. 880, 92 L.Ed. 1055 (1948), a statute provided that the jury in a murder case could qualify its verdict by adding "without capital punishment," that if the jury so qualified its verdict the punishment would be life imprisonment, but that "[i]f a qualified verdict is not returned, the death penalty is mandatory." 333 U.S. at 746, 68 S.Ct. at 883. The government's argument, somewhat like the defendant's argument in the instant case, was that the jurors were required to be unanimous in order for the jury to add the

qualification but that unanimity was not required to reject the qualification. In the government's view, if the jurors remained in disagreement, there would be no qualification, and the sentence would be death. The Ninth Circuit rejected the government's argument, holding "that unanimity of the jury was required both as to guilt and the refusal to qualify the verdict by the words 'without capital punishment.'" *Id.* at 746–747, 68 S.Ct. at 883. The Supreme Court in *Andres* agreed with the Ninth Circuit and disagreed with the government, stating as follows (*id.* at 748–749, 68 S.Ct. at 804):

> "Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply. In criminal cases this requirement of unanimity extends to all issues—character or degree of the crime, guilt and punishment—which are left to the jury.... [W]e conclude that the construction placed upon the statute by the lower court is correct—that the jury's decision upon both guilt and whether the punishment of death should be imposed must be unanimous. This construction is more consonant with the general humanitarian purpose of the statute and the history of the Anglo-American jury system than that presented by the Government."

Numerous cases are in accord with the position taken in *Andres* concerning the jury's finding of mitigation or determination of the penalty in a capital case. *See, e.g., Smith v. United States*, 47 F.2d 518, 519–520 (9th Cir.1931); *People v. Green*, 47 Cal.2d 209, 302 P.2d 307, 315–322 (1956); *People v. Hall*, 199 Cal. 451, 249 P. 859 (1926); *State v. Reynolds*, 41 N.J. 163, 187, 195 A.2d 449 (1963); *People v. Hicks*, 287 N.Y. 165, 170–171, 174, 38 N.E.2d 482 (1941). *See also, Davis v. State*, 51 Okla.Cr. 386, 389–390, 393–397, 1 P.2d 824, 2 P.2d 965 (1931); Anno., *Unanimity As To Punishment in Criminal Case Where Jury Can Recommend Lesser Penalty*, 1 A.L.R.3d 1461 (1965). *Contra: Commonwealth v. Stewart*, 359 Mass. 671, 270 N.E.2d 811,

814–815 (1971), *vacated,* 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972).[9]

■ Consequently, we reject the defendant's argument that whenever the jurors cannot unanimously agree on the same mitigating circumstance or circumstances, they must return a death sentence.

### B.

The foregoing discussion disposes of the defendant's contention that the Maryland death penalty statute, as applied to the facts of this case, is unconstitutionally mandatory.[10] Nevertheless, considering the defendant's misconstruction of the statute and the views expressed in the dissenting opinion, we believe that it would be useful for future guidance to comment generally upon the required jury determinations under Art. 27, § 413(d), (f), (g), and (h) in light of the traditional requirement of unanimity which is expressly embodied in § 413(i).

In the usual criminal trial, of course, involving the issue of whether the defendant committed the offense charged,

---

**9.** With regard to the requirement of unanimity in cases under recent death penalty statutes, *see Whalen v. State,* 492 A.2d 552, 562 (Del. 1985); *State v. Loyd,* 459 So.2d 498, 503 (La.1984); *State v. Williams,* 23 Ohio St.3d 16, 490 N.E.2d 906, 913 (1986); *State v. Jenkins,* 15 Ohio St.3d 164, 473 N.E.2d 264, 306–307 (1984); *Evans v. Commonwealth,* 228 Va. 468, 323 S.E.2d 114, 121 (1984), *cert. denied,* 471 U.S. 1025, 105 S.Ct. 2037, 85 L.Ed.2d 319 (1985); *State v. Mak,* 105 Wash.2d 692, 718 P.2d 407, 442, 445, *cert. denied,* — U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).

The only case of which we are aware supporting the defendant Mills's argument under a recent death penalty statute (although not supporting his view as to constitutionality) is *State v. Kirkley,* 308 N.C. 196, 302 S.E.2d 144, 156–157 (1983). The North Carolina court cited no authority in support of its conclusion.

**10.** The defendant also asserts that the Maryland death penalty statute is unconstitutional with regard to the allocation of the burden of proof. The identical argument has repeatedly been rejected by this Court. *See Foster, Evans and Huffington v. State,* 305 Md. 306, 503 A.2d 1326, *cert. denied,* — U.S. ——, 106 S.Ct. 3310, 3315, 92 L.Ed.2d 722, 723, 745 (1986); *Foster v. State, supra,* 304 Md. at 471–480, 499 A.2d 1236, and cases there cited.

the result of a hung jury is ordinarily a mistrial and, at the state's option, a new trial on the issue. It is clear from Art. 27, § 413(k)(2), however, that the General Assembly did not intend for juror disagreement in a capital sentencing proceeding to result in a mistrial and a new sentencing proceeding. As previously pointed out, § 413(k)(2) provides for dismissal of the jury and a court-imposed life sentence "[if] the jury, within a reasonable time, is not able to agree as to sentence."

One difficulty in applying § 413(k)(2) is that the General Assembly has required more of the jury than the single determination of what the sentence should be. Under § 413(d), (f), (g) and (h), the jury must make decisions concerning the existence or non-existence of aggravating circumstances, the existence or non-existence of mitigating circumstances, and the weighing of aggravating against mitigating circumstances. Moreover, analytically (if not always practically) these decisions are to be made in sequential stages. The matter which the statute does not fully address is what happens where the jurors are unable to achieve entirely the contemplated unanimity and there is juror disagreement at different stages and with respect to different types of issues.

Section 413(d) first requires the jury to determine whether or not any of ten statutorily specified aggravating circumstances exist. Section 413(f) states that if the jury "does not find, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall state that conclusion in writing, and the sentence shall be imprisonment for life." Section 413(g) then provides that if the "jury finds beyond a reasonable doubt, that one or more of these aggravating circumstances exist," the jury must go on to a consideration of mitigating circumstances. Under these provisions, a finding that at least one aggravating circumstance exists is clearly a precondition for the jury to consider mitigation, weighing and the possibility of a death sentence.

Consequently, absent a finding of an aggravating factor, a life sentence is to be imposed at the conclusion of the proceedings under subsection (d) and (f). If the jurors unanimously find the absence of any statutory aggravating circumstance, the jury under subsection (f) completes the verdict sheet accordingly and a life sentence is imposed. If the jurors are in disagreement and, after a reasonable period of time, unable to determine unanimously (as required by § 413(i)) that at least one aggravating circumstance is present, § 413(k)(2) comes into operation, the jury is dismissed, and the court imposes a life sentence.

■ The situation may also arise in connection with aggravating circumstances where the jurors unanimously agree that one or more aggravating circumstances exist, unanimously agree that several aggravating circumstances do not exist, but, after a reasonable time, remain in disagreement over the existence of one or more other possible aggravating circumstances listed in the statute. It is obvious that § 413(k)(2) does not operate in this situation to terminate the proceeding, because § 413(g) makes it clear that, upon a finding of only one statutory aggravating circumstance, the jury is to proceed and consider possible mitigating circumstances. Thus, in the hypothetical situation posed, the jury should mark "yes" on the form or verdict sheet as to the aggravating circumstance or circumstances which it finds present, should mark "no" as to the aggravating circumstance or circumstances which it finds absent, should not give any answer as to the presence or absence of the aggravating circumstance or circumstances over which it remains in disagreement, and should proceed to consider the presence or absence of mitigating circumstances under § 413(g).

Turning to the consideration of mitigating circumstances, § 413(g) requires the jury to decide "whether ... any of the following [eight statutorily specified] mitigating circumstances exist." The eighth one is any fact which the jury believes is mitigating. Therefore, as discussed in Part A above, under the statute and implementing form prescribed

by former Rule 772A, the jurors are expected to reach a unanimous decision concerning the presence or absence of each mitigating circumstance, as the jurors in the instant case did. The statute then provides in § 413(h) that "[i]f the court or jury finds that one or more of these mitigating circumstances exist, it" shall weigh the mitigating circumstances against the aggravating, determine which outweighs the other, and enter a sentence of life imprisonment or death depending on which outweighs the other.

The express language of the statute in § 413(g) and (h), however, contains substantial gaps. There is no provision, comparable to § 413(f) (regarding the absence of aggravating circumstances), telling the court or jury what to do if it finds no mitigating circumstances. Furthermore, there is no provision specifying what happens if the jurors are divided over some mitigating circumstances and thus cannot reach a complete determination. The language of § 413(g) and (h) deals only with the situation where the court or jury determines that one or more mitigating circumstances exist.

Nevertheless, the General Assembly obviously did not intend that the sentencing proceedings should end in a stalemate and that § 413(k)(2) should be invoked if the jury failed to find any mitigating circumstance. This would result in a life sentence for a defendant where there is no finding of mitigation. In contrast, § 413(h) would require a death sentence for the defendant where there is a finding of mitigating circumstances but they are deemed outweighed by aggravating circumstances. Such construction of the statute would be entirely unreasonable.

▆▆▆ The General Assembly, however, did provide that procedural gaps in the statute could be filled by the Court of Appeals. Section 413(l) states:

"The Court of Appeals may adopt rules of procedure to govern the conduct of a sentencing proceeding conducted pursuant to this section, including any forms to be used by the court or jury in making its written findings and determinations of sentence."

Pursuant to subsection (l), this Court in former Rule 772A provided for the situation where the court or jury determined that no mitigating circumstance existed. The sentencing form specifies that, where there is a determination of no mitigating circumstances, the sentence is to be death. This is logical and in accord with the General Assembly's purpose that mitigating and aggravating circumstances be weighed. If there are no mitigating circumstances, there is nothing to weigh against the aggravating factors; one side of the scale is zero. Consequently, a death sentence is appropriate under the statutory scheme.

The sentencing form under former Rule 772A does not, however, deal with the situation where there is no jury agreement on the existence of any particular mitigating circumstance but where there also is no unanimous jury determination that no mitigating circumstance existed. This situation could take a variety of forms. For example, all of the jurors might agree that several very weighty mitigating circumstances are present, but there may be no unanimity concerning the existence of any one particular mitigating circumstance. At the other extreme, eleven jurors might believe that no mitigating circumstance exists, but one juror might insist that one mitigating circumstance exists although it is outweighed by the aggravating circumstances. It would not be consistent with the legislative scheme for the sentencing proceeding to be aborted under § 413(k)(2) in this situation.

In our view, where the jurors after a reasonable period of time cannot agree on any particular mitigating circumstance or circumstances, but also cannot agree that no mitigating circumstances exist, the jurors should proceed to the weighing process under § 413(h). Each juror should weigh the mitigating circumstance which he or she finds, if any, against the aggravating circumstances which the jury under § 413(d) has unanimously found to exist. In this manner, a jury might well arrive at a unanimous determination on the sentence even though there was underlying disagreement on the presence or absence of some mitigat-

ing circumstances. This process comports with the general legislative intent that the imposition of the penalty in these cases should depend upon the weighing of mitigating and aggravating circumstances.

In sum, with regard to mitigating circumstances, the jury should mark the sentencing form "yes" for each mitigating circumstance which is unanimously found to exist, mark the form "no" for each mitigating circumstance which is unanimously found not to exist, and leave the form blank with regard to those mitigating circumstance (if any) as to which there is disagreement. Then, unless there is unanimity that no mitigating circumstances exists (such as in the instant case), the jurors should engage in the weighing process.

## VII.

Mills next argues that the trial court erred in failing to instruct the jury that it must find that he was a principal in the first degree in order for the death penalty to be a possible sentence. Preliminarily, we note that Mills made no request for such instruction, and made no objection to the trial court's failure to give the instruction *sua sponte.*

Furthermore, under the facts of this case, the absence of the instruction could not have prejudiced Mills. There could be no doubt concerning the defendant's status as a principal in the first degree. Mills and the victim were isolated in a locked jail cell. Mills emerged with a bloody "shank" in his gloved hand and confessed to killing his cell mate, as previously described. He concedes in his brief "the absence of any factual dispute raised by the evidence" regarding the matter. (Brief, p. 53). Accordingly the omission in the trial court's instructions, even if error, was clearly harmless.

## VIII.

Mills makes two additional complaints concerning the sentencing hearing. Neither matter, however, was preserved for appellate review. Rules 4–322, 4–325(e) and 885.

■ *First,* the defendant claims that the trial court's instruction to the jury on the possible mitigating circumstance of the youthful age of the defendant provided insufficient "guidance" and was "oversimplified." (Brief, pp. 53–54). We need not explore this question, as Mills never requested an instruction on the mitigating circumstance of youthful age, did not object to the instruction given, and defense counsel expressly stated at the conclusion of the trial judge's jury instructions: "The defense has no objection to the instructions given to the jury, your honor."

■ *Second,* the defendant asserts that the jury was permitted to hear "a great deal of inadmissible and highly prejudicial evidence." (Brief, p. 56). Not only was there no defense objection to this evidence, but some of the evidence complained of was apparently introduced by the defense. The defendant on appeal obviously cannot challenge the admissibility of this evidence.[11]

## IX.

The defendant contends that the death sentence in this case is excessive and disproportionate to the penalty imposed in similar cases.[12] Mills cites six allegedly "similar cases" from the circuit courts involving homicides in correctional institutions.[13] In all six cases, the defendants either

---

11. To the extent that trial counsel's tactics in deciding to present certain evidence may relate to the constitutional adequacy of counsel, the matter is not appropriate for resolution on direct appeal. It can be raised in a post conviction proceeding. *Harris v. State,* 299 Md. 511, 517–519, 474 A.2d 890 (1984), and cases there discussed.

12. Art. 27, § 414(e)(4) requires that this Court determine "(4) [w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

13. They are *State v. Parker,* No. 26,113, Circuit Court for Anne Arundel County; *State v. Holt,* No. 5215, Circuit Court for Washington County; *State v. Appleby,* No. 18429601, Circuit Court for Baltimore City; *State v. Ellison and Little,* Nos. 18403101 and 18403103, Circuit Court for Baltimore City; *State v. Gee,* No. 18321508, Circuit Court for

were convicted of first degree murder and received life sentences or were convicted of second degree murder and received a term of years. The defendant Mills asserts that his "research has disclosed *no* cases in which murder perpetrated by an inmate has resulted in a death sentence." (Brief, p. 63).

■ Preliminarily, we note that because no person has previously been sentenced to death for a particular type of murder, under a recently enacted death penalty statute, does not mean that the first death sentence for that type of murder is necessarily disproportionate or excessive. Otherwise, no one would ever receive the ultimate penalty under a capital punishment statute requiring proportionality review. For a detailed discussion of proportionality review under the present Maryland capital punishment statute, as well as under similar statutes in other states, *see Tichnell v. State*, 297 Md. 432, 457–473, 468 A.2d 1 (1983), *cert. denied*, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984).

■ We have examined the six cases relied upon by the defendant Mills, and we conclude that the death sentence in the present case is not disproportionate or excessive in light of the sentences imposed in those cases. In only one of those cases was there a capital sentencing proceeding (*State v. Parker*), and there the sentencing authority found as a mitigating factor that the defendant had a significant mental impairment. In the other cited cases there were factors or circumstances distinguishing them from the instant case. For example, in one case there was evidence that the defendant had been physically and verbally abused by the victim and in another cited case the jury could not determine whether the accused were principals in the first degree.

The record before us shows that Mills brutally stabbed his cell mate to death. There was neither evidence of

---

Baltimore City; *State v. Mack,* No. 5737, Circuit Court for Washington County.

provocation nor of a struggle; there was express evidence of long premeditation. Mills fingerpainted a slogan with the victim's blood, and he acknowledged the deed as soon as it was discovered. The jurors unanimously found no mitigating factors, and our review of the record confirms that the jury's action was warranted. Mills was serving a sentence for second degree murder at the time of this offense.

Considering the crime and the defendant, and comparing the penalty in this case to the death sentences imposed in cases such as *Booth v. State, supra,* 306 Md. 172, 507 A.2d 1098; *Foster v. State, supra,* 304 Md. 439, 499 A.2d 1236; and *Colvin v. State,* 299 Md. 88, 472 A.2d 953, *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984), where the defendants also brutally and without provocation stabbed their victims to death, we do not believe that the sentence here was disproportionate or excessive.

## X.

Mills's final argument is that Art. 27, § 413(d)(2), specifying as an aggravating circumstance that "[t]he defendant committed the murder at a time when he was confined in any correctional institution," is unconstitutional. The gist of his contention is as follows (Brief, p. 66):

"It is a fundamental constitutional requirement that 'an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' *Zant v. Stephens,* 462 U.S. 862 [876–878, 103 S.Ct. 2733, 2742–43,] 77 L.Ed.2d 235, 249–250 (1983). Applying the foregoing standard to § 413(d)(2) it is clear that this aggravating factor fails to meet the constitutional standard. Both of the traditional, presumably rational, concerns in dealing with prisoners—escape and deterring 'lifers'—are specifically provided for by other aggravating factors. Article 27, § 413(d)(3) & (8)."

In addition, Mills asserts that § 413(d)(2) is overly broad, covering some "individuals ... no more culpable than members of society at large...." (*Ibid.*).

In our view, the Maryland General Assembly was not constitutionally prohibited from listing as an aggravating circumstance the commission of a murder while an inmate in a correctional institution. This aggravating factor closely resembles one of the aggravating factors proposed by the Model Penal Code, and cited with approval in *Gregg v. Georgia*, 428 U.S. 153, 193–195 n. 44, 96 S.Ct. 2909, 2935 n. 4, 49 L.Ed.2d 859 (1976), namely that "[t]he murder was committed by a convict under sentence of imprisonment." Moreover, it seems plain to us that this circumstance does genuinely narrow the class of persons eligible for the death penalty.

Finally, the General Assembly is entitled to treat inmate status as an aggravating factor to deter inmates from murdering each other and those who come in contact with them. As pointed out by the Supreme Court of Arizona in *State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007, 1019 (1983), the "legislative intent of this ... [aggravating factor] is to protect the guards and other inmates at such institutions where a defendant is confined and to discourage violence by incarcerated persons." We cannot conclude that this legislative purpose is irrational. Furthermore, this purpose is not entirely met by other aggravating factors such as § 413(d)(3) and (8), concerning those sentenced to life imprisonment or death and those who escape or attempt to escape, neither of which would have been applicable to Mills.

We reject, therefore, the defendant's assertion that § 413(d)(2) is unconstitutional.[14]

JUDGMENT AFFIRMED.

---

**14.** In light of the Supreme Court's recent decision in *Booth v. Maryland*, —— U.S. ——, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), we note that in the instant case no "Victim Impact Statement" was introduced in

MURPHY, Chief Judge, concurring in the judgment:

I am in full agreement with the Court's affirmance of Mills' conviction for first degree murder. I also agree with the Court's judgment affirming the imposition of the death penalty, although I do not fully concur with the Court's construction of the statute and implementing rules, as set forth in Part VI of the opinion.

---

evidence or even proffered. There was attached to the Division of Parole and Probation's investigation report a memorandum from Jane Christy of the victim/witness assistance program to the State's Attorney, summarizing an interview with the victim's brother and sister-in-law. This memorandum was admitted into evidence after Mills's counsel expressly informed the Court that he had read it and did not object to its admission. The memorandum stated in its entirety as follows:

"Paul and Thomas Brown came from a family of six. At a very young age they were removed from their parents custody because of neglect and placed in separate foster homes. (Removal by the Department of Social Services was prompted by Paul being hospitalized at age 4 for anemia and malnutrition.)

"Paul was a hyperactive child and hard to handle which resulted in a lot of beatings from his various guardians. He ran away constantly from the various homes in which he had been placed. After a while Paul, at the age of 15, just started living on the streets. He was eventually sent to the Maryland Training School for Boys. Paul never really had a home or a family as such. 'I (Thomas Brown) tried to keep in touch with Paul by writing and visiting him whenever possible. I always had good homes and a good life and always felt so guilty that there was nothing I could do to help Paul. After all, I was only one year older than he.'

" 'Paul was a good person who had a tough life, a lot of bad breaks, no family, no home, nobody to really give him a chance. I sometimes think he felt more secure in prison, because he had no one on the outside. Sure, he committed crimes, but he wasn't violent. He did what he had to do to survive and he got involved with a lot of bad people."

This memorandum did not purport to be and did not fall within the statutory requirements of a victim impact statement. *See* Code (1957, 1986 Repl.Vol.), Art. 41, § 4–609(c). The memorandum did not describe the impact of the crime on the victim's family or the "family members' opinion and characterizations" of the crime and the defendant. *Booth v. Maryland, supra.* As defense counsel recognized at the sentencing proceeding in this case, the content of this statement would not inflame a jury or otherwise prejudice Mills. Consequently, the memorandum did not constitute the "victim impact evidence" found constitutionally inadmissible in *Booth v. Maryland, supra.*

McAULIFFE, Judge, dissenting.

I concur in the decision to affirm the conviction. Because I am unable to agree with Part VI of the majority opinion and because I believe the sentencing procedure employed in this case was constitutionally unfair to the Defendant, I dissent from the affirmance of the sentence of death.

At the threshold of my disagreement with the majority lies a question of statutory construction. The majority holds that the Legislature intended to make the *non-existence* (as well as the existence) of aggravating and mitigating circumstances an ultimate issue in a capital sentencing proceeding, and therefore intended to require a unanimous verdict of existence or non-existence. I believe the Legislature intended to require unanimity for a finding of the existence of a circumstance, but did not intend to mandate a unanimous finding that any individual circumstance does not exist. I further believe it is probable, or at least reasonably possible, that this jury understood the language as the Legislature intended it, and that the answers of "no" given on the sentencing form represented their failure to unanimously find the existence of a circumstance, rather than a unanimous determination that the circumstance did not exist. This is no mere semantic difference, for if I am correct, it means that the procedure followed in this case impermissibly and unconstitutionally precluded the ultimate consideration of mitigating factors that may have been proven.

Moreover, even if I were to accept the majority's interpretation of the statute, I would find it intellectually difficult to accept the rather extraordinary, and I think illogical, "filling of the gaps" accomplished by Section VI.B of the majority opinion. Finally, if this newest creative interpretation of our capital punishment statute is entirely correct there should nonetheless be a new sentencing proceeding in this case. It is clear to me that no one at the trial could

have understood the law to be as it is announced today, and the trial judge's instructions were to the contrary. I turn to a more detailed examination of these several problems.

Our death penalty statute mandates that the jury "shall first consider whether, beyond a reasonable doubt, any of the [enumerated] aggravating circumstances exist." Maryland Code, Art. 27, § 413(d). Combining that with the requirement of unanimity which appears elsewhere in the statute, I interpret the question presented to the jury as to each enumerated aggravating circumstance to be:

Do the jurors unanimously determine that this aggravating circumstance has been proven to exist beyond a reasonable doubt?

If one juror believes it has been so proven, but eleven do not the jury answers "no" to the question, and that particular aggravating factor cannot be considered in the ultimate weighing process. Every relevant section of the statute speaks to whether the jury finds that an aggravating circumstance *exists*—nothing therein suggests the jury must also be unanimous in determining that an aggravating circumstance *does not exist.* Consider the language of these sections:

(d) [T]he court or jury, as the case may be, shall first consider whether, beyond a reasonable doubt, any of the following aggravating circumstances exist:

\* \* \* \* \* \*

(f) If the court or jury does not find, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall state that conclusion in writing, and the sentence shall be imprisonment for life.

(g) If the court or jury finds, beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall then consider whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist:

\* \* \* \* \* \*

(h) If the court or jury finds that one or more of these mitigating circumstances exist, it shall determine whether, by a preponderance of the evidence, mitigating circumstances outweigh the aggravating circumstances.[1]

Unfortunately, the form initially approved by this Court for use in capital sentence proceedings did not make clear that the requirement of unanimity with respect to consideration of an aggravating circumstance applied only to the question of whether that circumstance had been proven to exist. Rather, Maryland Rule 772A(d), effective January 1, 1979, approved the following language:

Based upon the evidence we unanimously find that each of the following aggravating circumstances which is marked 'yes' has been proven BEYOND A REASONABLE DOUBT and each aggravating circumstance which is marked 'no' has not been proven BEYOND A REASONABLE DOUBT....

Although this language can accommodate the interpretation I believe to be correct, it also can accommodate the interpretation placed upon it by the majority—that the jurors must be unanimous in their determination that the aggravating circumstance does not exist in order to answer "no." A change in this language was made by the adoption of Rule 4–343(c) which supplanted Rule 772A(d), and which became effective July 1, 1984. That section now reads:

Based upon the evidence we unanimously find that each of the following aggravating circumstances that is marked 'yes' has been proven BEYOND A REASONABLE DOUBT. · Each of the aggravating circumstances that has not been so proven is marked 'no.'

This change, intended to be one of style and not substance, more accurately reflects the intent of the Legislature. Un-

---

**1.** We have interpreted this language to mean that the jury shall determine whether, by a preponderance of the evidence, the *aggravating* circumstances outweigh the *mitigating* circumstances. *Foster v. State,* 304 Md. 439, 499 A.2d 1236 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986).

fortunately, the new language is not so clear in its meaning that it does not require explanation by means of careful instruction, and in any event the revised form was not used in this case.[2]

Had the sentencing form simply used the language of the statute by providing that "we unanimously find beyond a reasonable doubt that the following aggravating circumstances exist" and then listed the aggravating factors with a box to be checked as to each found to exist, I believe jurors would have had no difficulty in concluding they were to mark only those circumstances they unanimously found to have been proven to exist. They simply would not mark those about which they disagreed. Because the jurors are specifically instructed that they may consider only the aggravating factors they have unanimously found to exist, the defendant is fully protected. Thus, there is no need, much less any legislative mandate, for a jury to unanimously find that a particular aggravating circumstance does not exist before it may continue deliberation.

Not only is the legislative scheme for consideration and determination of aggravating circumstances adequate for the protection of an accused, it may well grant him more protection than is constitutionally required. The Supreme Court of Virginia has held, for example, that the requirement of unanimity extends to the ultimate question of whether death is the appropriate sanction and to the question of existence of any statutory enumerated aggravating factors that justify the imposition of the death penalty, but not to the existence of each individual aggravating circumstance. *Clark v. Commonwealth,* 220 Va. 201, 257 S.E.2d 784, 791–92 (1979), *cert. denied,* 444 U.S. 1049, 100 S.Ct.

---

**2.** The form actually used in this case tracked Rule 772A(d), rather than Rule 4–343(c). The latter rule was applicable and should have been followed, but that change alone would not have cured the deficiencies present in this sentencing procedure. I have reviewed other differences between the form actually used and that which should have been used, and I find no indication of possible prejudice to the Appellant.

**78**

741, 62 L.Ed.2d 736 (1980). *See also Briley v. Bass,* 584 F.Supp. 807, 819 (E.D.Va.) (United States Constitution does not require that jury be unanimous as to aggravating factors relied upon in imposing death penalty), *cert. denied,* 469 U.S. 893, 105 S.Ct. 270, 83 L.Ed.2d 206 (1984); *Blake v. State,* 239 Ga. 292, 236 S.E.2d 637 (jury conclusion that sufficient aggravating circumstances exist cannot be impeached by showing that part of the jury proceeded upon one interpretation and part upon another), *cert. denied,* 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977).

In *State v. Kirkley,* 308 N.C. 196, 302 S.E.2d 144 (1983), the Supreme Court of North Carolina considered and rejected a defendant's claim that the requirement of unanimity extended not only to the existence of aggravating and mitigating circumstances, but to their non-existence as well. That Court said, *id.* 302 S.E.2d at 157:

> Defendant contends, however, that even if it is proper that a mitigating circumstance exist only when there is unanimous agreement by the jury, the trial judge erred when he instructed the jurors that a mitigating circumstance must be deemed not to exist in the absence of a unanimous agreement on its existence. Defendant urges this Court to impose the following requirement: that in order for a jury to find that a mitigating factor does not exist it must first unanimously agree it does not exist. If no unanimous agreement is reached, defendant contends, the result is a hung jury and the automatic imposition of life imprisonment. Although novel, the suggested approach is unworkable and contrary to the general principles of unanimity.
>
> \* \* \* \* \* \*
>
> The unanimity requirement is only placed upon the finding of whether an aggravating or mitigating circumstance exists.

The mandate of our statute that the jury specifically and in writing determine "[w]hich, if any, aggravating circumstances it finds to exist" obviates consideration of the above approach and the thorny subject of unanimity as it relates

to the existence of aggravating circumstances. With this language the Legislature has made it clear that there must be unanimity as to each individual aggravating circumstance before it can be considered. Still, I shall return to the question of unanimity and a consideration of the levels at which it must be applied in the adjudicative process, when I turn to analysis of the proper function of the jury with respect to the consideration of mitigating circumstances.

Under Appellant's interpretation of the statute, with which I agree, a split of six-six on whether an aggravating or a mitigating circumstance has been proven to exist simply means that the answer of the jury should be "no", *i.e.* the jury cannot unanimously determine by the appropriate standard of persuasion that the particular circumstance has been proven to exist. As previously stated, this conclusion causes no difficulty with respect to aggravating circumstances. It is well within the province of the Legislature to determine that an aggravating circumstance cannot be considered unless all jurors agree that it has been proven to exist, even though that result is not constitutionally required.

It is quite a different matter, I suggest, for the Legislature to impose as a condition precedent to the collective consideration of relevant mitigating circumstances the requirement that all twelve jurors agree on the existence of each mitigating circumstance to be considered. As Appellant points out, the result of such a restriction not only would be illogical, but unconstitutional. Following Appellant's hypothetical situation and interpretation of the statute to a logical conclusion demonstrates the point. Because of the six-six split on the two mitigating circumstances, these circumstances have not been unanimously found to exist, and the form will be marked "no" as to each. If no enumerated or separately articulated mitigating circumstance has received the unanimous vote of the twelve jurors, the answers to each of the eight paragraphs of Section II (the mitigating circumstances section) will be "no." The

consequence of that situation is as automatic as it is deadly—the jurors are not permitted to engage in the weighing process or any deliberation on the appropriateness of the penalty of death, but are instructed that "[i]f Section II was completed and all of the answers were marked 'no', then enter 'Death'." Assuming there was a single aggravating circumstance in the hypothetical situation we have considered, and assuming that the six jurors who were not persuaded as to the existence of the first mitigating circumstance were the same six who were persuaded of the existence of the second mitigating circumstance in dispute, we are presented with twelve jurors who believe that relevant mitigating circumstances have been proven to exist and yet they are absolutely precluded from engaging in their principal function—the weighing of the aggravating against the mitigating circumstances to determine the appropriate sanction. It is entirely conceivable that if allowed to engage in appropriate deliberation on the ultimate question, the jurors may not be persuaded by a preponderance of the evidence that the aggravating circumstance outweighs the mitigating circumstance that each juror is convinced exists. To prohibit the jury from considering relevant mitigating circumstances is to effectively sever the constitutionally indispensible "link between contemporary community values and the penal system" that the jury is intended to provide. *Woodson v. North Carolina,* 428 U.S. 280, 295, 96 S.Ct. 2978, 2987, 49 L.Ed.2d 944 (1976) (quoting *Witherspoon v. Illinois,* 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968)). Drawing on the predicate that the penalty of death is qualitatively different from any other sentence, the Supreme Court said in *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991:

> [I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

Other hypothetical situations provide more dramatic evidence of the potential dangers of requiring a unanimous verdict on the question of the existence of each individual mitigating factor. If the vote of the jury is eleven to one for the existence of each of three mitigating circumstances and the dissenting vote is cast by a different juror in each instance, we can be certain that all twelve jurors have been convinced by a preponderance of the evidence that at least two relevant mitigating circumstances exist. Yet, because they do not agree on which two exist, the procedure employed in this case would foreclose their consideration of *any* mitigating circumstances, even though they unanimously believe that some relevant mitigating factor has been proven to exist.

To understand the evolution of the Maryland death penalty statute into its present form, and to place in sharp focus the exact nature of the problem as it relates to the required consideration of mitigating circumstances, a brief history of legislative enactments and relevant case law may be helpful.[3] From 1908 until 1972 trial courts of general jurisdiction were vested with discretion to sentence a person convicted of first degree murder to either death or life imprisonment. In 1972 the United States Supreme Court held that the grant of such unfettered discretion to impose the sentence of death violated the Eighth and Fourteenth Amendments to the Federal Constitution. *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed 2d 346 (1972). Responding to *Furman,* this Court promptly declared Maryland's death penalty statute unconstitutional. *Bartholomey v. State,* 267 Md. 175, 297 A.2d 696 (1972). Unfortunately, we read *Furman* as holding "that the death penalty is unconstitutional when its imposition is not mandatory." *Bartholomey,* 267 Md. at 184, 297 A.2d 696. The Legislature responded by passing a mandatory death penalty statute in 1975. Chapter 252, Acts of 1975, codified at Art. 27,

---

**3.** A more detailed history may be found in *Tichnell v. State,* 287 Md. 695, 720–29, 415 A.2d 830 (1980).

§ 413 of the Maryland Code (1957, 1976 Repl.Vol.). Within a year the United States Supreme Court held that mandatory death penalty statutes for first degree murder were unconstitutional because they did not permit the sentencing authority to consider mitigating circumstances involving the accused and the character of the offense before deciding whether the imposition of the death penalty was appropriate. *Woodson v. North Carolina, supra; Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). We then held the Maryland mandatory death penalty statute unconstitutional. *Blackwell v. State,* 278 Md. 466, 365 A.2d 545 (1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977).

At the same time it decided *Woodson,* however, the Supreme Court upheld the capital punishment statutes of Georgia, Texas and Florida, finding that the discretion of the sentencing authority had been adequately directed and limited so as to minimize the risk of wholly arbitrary and capricious action, but retained sufficiently to permit consideration of appropriate mitigating factors and thus to maintain the essential link with contemporary community values. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Our Legislature then returned to the drawing board and produced a death penalty statute that it believed consonant with the several views expressed in the joint opinions by which *Gregg, Jurek* and *Proffitt* were decided. Senate Bill 374 was enacted on March 10, 1978, as Chapter 3 of the Laws of 1978, and became effective July 1 of that year. That act established as conditions precedent for the imposition of the death penalty the same eight aggravating circumstances (with minor language changes) that had been contained in the 1975 mandatory death penalty law, but also added seven specific mitigating circumstances that could be considered by the sentencing authority in the ultimate determination of whether death was the appropriate sanction. Two days

after the new statute went into effect the Supreme Court held that, with the possible exception of the rarest kind of capital case, a sentencing authority could "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). Our Legislature responded to *Lockett* by enacting Chapter 521 of the Laws of 1979 to add the following paragraph to the list of mitigating circumstances to be considered by the sentencing authority:

> (8) Any other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case.

This serpentine path of evolution has been aptly described as the "product of a considerable history reflecting the law's effort to develop a system of capital punishment at once consistent and principled but also humane and sensible to the uniqueness of the individual." *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982). From the earlier concept that only mandatory death sentences would cure the problem of unbridled discretion condemned in *Furman* we have proceeded to an understanding that although the sentencer's discretion must be restricted to ensure that the penalty of death will not be inflicted in an arbitrary and capricious manner, the sentencer must be free to consider any relevant mitigating evidence regarding the character or record of the defendant and any of the circumstances of the offense. *Sumner v. Shuman*, —— U.S. ——, 107 S.Ct. 2716, 97 L.Ed.2d 56 [1987]; *Hitchcock v. Dugger*, 481 U.S. ——, 107 S.Ct. 1821, 95 L.Ed. 2d 347 (1987); *California v. Brown*, —— U.S. ——, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). We now know that room must be left for interposition of societal judgments of mercy and sympathy that may be engendered by a

consideration of relevant mitigating evidence. *Id.* In my view, the Maryland process for jury determination[4] of punishment in a capital case, consisting as it does of the requirements of both statute and rule, retains too much of the vestiges of the mandatoriness and fails to permit meaningful consideration of relevant mitigating circumstances.

The majority seems to suggest that no other application of the requirement of unanimity is possible—that the mandate of unanimity controls not only the verdict but also every subordinate predicate finding. Certainly where unanimity is required, the *verdict* must be unanimous. *State v. McKay,* 280 Md. 558, 375 A.2d 228, 97 A.L.R.3d 1238 (1977); *Ford v. State,* 12 Md. 514 (1859). Furthermore, the determination of any *ultimate issue* essential to the verdict must be unanimous. However, the determination of historic facts presents a different question, and where alternative findings of historic facts are advanced in support of a single conclusion the better rule is that the jurors need not agree on any single alternative fact provided they all agree on some alternative fact that leads them to a single conclusion on the ultimate issue. For example, in an action for damages arising out of an automobile accident, the jury must be unanimous in its finding on the ultimate questions of duty, breach, causation and damages, and of course on the verdict. Still the jurors need not agree on the historic facts supporting their common conclusion on an ultimate question. If the plaintiff has advanced alternative theories of negligence, *e.g.* the defendant was speeding, failed to keep a proper lookout, or failed to sound his horn, the jurors may be unanimous in their conclusion that the defendant was negligent, but for different reasons. The Supreme Court of Illinois, writing nearly a century ago, stated the applicable law succinctly:

---

**4.** Problems created by an improper and mechanical application of the requirement of unanimity are not present when the defendant elects to be sentenced by a judge.

The common law requires that verdicts shall be the declaration of the unanimous judgment of the 12 jurors. Upon all matters which they are required to find, they must be agreed. But it has never been held that they must all reach their conclusions in the same way and by the same method of reasoning.... To require unanimity ... not only in the result, but also in each of the successive steps leading to such result, would be practically destructive of the entire system of jury trials.

*Chicago & N.W. Ry. Co. v. Dunleavy,* 129 Ill. 132, 22 N.E. 15, 17–18 (1889).

The Court of Special Appeals acknowledged the applicability of this principle to criminal prosecutions in *Craddock v. State,* 64 Md.App. 269, 278, 494 A.2d 971, *cert. denied,* 304 Md. 297 (1985):

Generally, jurors are not required to uniformly accept all of the evidence presented in order to arrive at a unanimous verdict. Some jurors unquestionably reject evidence that others accept in determining guilt or innocence. In short, the law requires unanimity only in the verdict, not in the rationale upon which the verdict is based. In the case *sub judice,* the statute sets forth various acts that constitute the crime of theft. As long as jurors unanimously agree that theft in some form was committed, nothing more is required.

Compare *U.S. v. Gipson,* 553 F.2d 453 (5th Cir.1977). *See also State v. Smith,* 136 Ariz. 273, 665 P.2d 995 (1983), (where jurors are unanimous in finding first degree murder they need not agree on whether it was premeditated or felony murder); *Blake v. State, supra,* (if a verdict may be justified upon either of two interpretations of the evidence the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon another); *Clark v. Commonwealth, supra,* (aggravating circumstances are treated as a single unit and jurors need not specify which portion of the unit they find in order to satisfy requirement of unanimity); *State v. Lomagro,* 113 Wis.2d 582, 335 N.W.2d 583 (1983) (where a single crime is

charged, jury unanimity on the particular alternative means of committing the crime is not required if the acts are conceptually similar); *State v. Carey,* 42 Wash.App. 840, 714 P.2d 708 (1986) (jurors need not be unanimous on determination of premeditated or felony murder so long as they are unanimous that one or both have been proved). *Contra, State v. Kirkley, supra,* 302 S.E.2d at 157 (jury must unanimously agree that a mitigating circumstance exists before it may be considered).

Although the question of unanimity may arise in connection with instructions to be given in cases where a general verdict is to be returned, the problem will be seen more frequently where the case is submitted to the jury on special verdicts or interrogatories. As Dean McCormick pointed out in his article, *Jury Verdicts Upon Special Questions in Civil Cases,* 2 F.R.D. 176 (1941), the impetus in several states for resort to special questions may have been to provide a check on jury nullification of the law, and in some cases to avoid tedious instructions on the law. Dean McCormick concluded that submission on special questions had worked well where a few *ultimate* questions stated in simple form were submitted, but that submission on multiple subordinate facts and issues had caused difficulty.[5]

The particular problems of jury unanimity in cases involving special verdicts is also discussed by Professor Ruth Ginsburg in *Special Findings and Jury Unanimity in the Federal Courts,* 65 Colum.L.Rev. 256 (1965). As Professor Ginsburg cogently observes, the definition of what constitutes an "ultimate question" and the precise formulation of the question to be put to the jury are matters of considerable importance.

---

**5.** Additional problems resulting from the failure of one or more jurors to join in the answer to a special interrogatory or special verdict are collected in an annotation, Annot., Failure To Join In Special Verdict, 155 A.L.R. 586 (1945).

[W]hen separate fact allegations, each supported by evidence, would independently permit the jury to reach a conclusion on an ultimate issue, appropriate definition of the elements of the case on which the jury must agree poses a problem of more than academic significance. In close cases, the chance of a verdict for one side or the other may be enhanced or restricted depending upon the detail or the generality of the propositions upon which agreement is required. *Id.* at 262.

After discussing two alternatives to a proper definition of the requirement of unanimity, Professor Ginsburg concludes:

A definition of unanimity in terms of particular facts corresponds to a theoretical image of the jury as a singular body—twelve men who, through the alchemy of the deliberative process, become as one. In reality, however, perfect harmony, even if it were desirable, is not to be anticipated. A formal requirement of accord on independent particulars, each of which standing alone would support an ultimate finding, impels formal agreement. If each juror subscribes to at least one of the independent particulars, but no particular is subscribed to by all, it seems improbable that the jury would—and out of tune with common-sense notions of justice that the jury should—report itself "hung" rather than proceed to decision. In such a case, if particular fact questions were submitted to the jurors, agreement to answer the "right way" by reporting unanimity on one or more of the particulars would be the more likely course.

The alternative definition—unanimity upon ultimate issues—appears the more desirable. It takes into account the collective nature of the jury and does not purport to carry the image of a composite individual beyond practical limits. In short, unanimity defined in terms of ultimate issues strikes a balance between two extremes: failure to define the objects of unanimity and "particular fact" definition. The latter, rigidly and unrealistically, equates the collective judgment of twelve with the indi-

vidual judgment of a single trier. The former, although it would provide maximum leeway for the "equitable dispensing power" of the jury as a palliative for archaic rules of law, would also constitute an abdication of the judicial function. *Id.* at 268 (footnotes omitted).

Having concluded that the requirement of unanimity is properly applied to the ultimate questions presented by a given case, I turn to the more specific problem of what constitutes the ultimate question or questions in a capital sentencing proceeding. The absolute ultimate question is, of course, whether death is the appropriate penalty. To reach that question the jury must determine whether one or more of the statutory enumerated aggravated circumstances exist in the case. If one or more aggravating circumstances are found to exist, the jury must determine whether one or more relevant mitigating circumstances exist. The verdict is then determined by the jury weighing the aggravating against the mitigating circumstances and determining whether, by a preponderance of the evidence, the aggravating outweigh the mitigating.

Clearly, the ultimate verdict must be unanimous. In addition, I entertain no doubt that the jurors must be unanimous in their determination that one or more enumerated aggravating circumstances have been proven to exist. As noted earlier, I am not persuaded that there is a constitutional requirement that all jurors agree as to the existence of *each* aggravating circumstance to be considered, but that question is not before us. The Legislature has imposed that requirement by statute, and the requirement does not in any way contravene rights of the defendant.

Not quite as clear, but acceptable to me for the purposes of this case, is the proposition that in order to engage in the ultimate weighing process each juror must determine that one or more relevant mitigating circumstances exist.[6] I do

---

**6.** A strong argument can be made that even in the absence of a finding that one or more mitigating circumstances exist, the jury must be free to reject the sanction of death as the appropriate penalty. The

not agree, however, that the Legislature may constitutionally require unanimity as to each individual mitigating circumstance before it may be given consideration in the final weighing process. As I have taken some pains to point out, this is a position that extends the requirement of unanimity beyond the ultimate question of whether all jurors believe some relevant mitigating circumstance or circumstances exist, and therefore it is out of step with currently accepted principles of law. More important, however, the requirement may mechanically exclude from consideration by the jury substantial historical facts and mitigating circumstances that might well tip the balance in the final weighing process, and thus it is constitutionally infirm. Unfortunately, our Legislature has imposed precisely that requirement. Read together, subsections (i) and (j) of § 413 require a written determination by the jury, stating "specifically ... [w]hich, if any, mitigating circumstances it finds to exist."

Returning to the original hypothetical situation, if six jurors believe one mitigating circumstance has been proven to exist and six others believe another has been proven to exist, under the procedure followed in this case none of them can consider either mitigating circumstance in the final weighing process. Indeed, no matter how many jurors believe how many mitigating circumstances exist, no one will be allowed to consider any of them unless all twelve happen to agree on a single one. Nor does the presence of a "catchall" provision cure the deficiency, at least as it

---

rationale is that although an aggravating circumstance determined by the Legislature to be sufficient to support the penalty of death has been proven, the jurors may agree that the facts of the particular offense are not so egregious as to warrant imposition of the death penalty in a particular case. I agree that this option must be open to the jury, but I conclude that it is under Maryland death sentencing proceedings, and that the problem is one of semantics. Where twelve jurors agree that the circumstances of the offense, although crossing the legal threshold so as to justify consideration of the death penalty, do not in fact warrant death in the particular case, that jury has in fact found a *mitigating circumstance* even though it may be difficult to articulate. Trial judges and counsel should make this clear to the jury through appropriate instructions and argument.

appears in the statute and the rule. After listing seven mitigating factors the jury should consider, subsection (g)(8) of the statute adds "[a]ny *other* facts which the jury ... specifically sets forth in writing that it finds as mitigating circumstances in the case." (emphasis added). Manifestly, this language excludes the possibility that individual judgments concerning the seven circumstances previously considered could somehow be worked into this section. Moreover, by requiring in the same format that the jury state specifically and in writing any other facts that it finds as mitigating circumstances, the statute and rule perpetuate the requirement for specific unanimity as to historical facts rather than unanimity on the collective existence of relevant mitigating circumstances.[7]

I appreciate the fact that entirely legitimate concerns about the need to impose limitations on "unbridled discretion" and the need to provide as much information as possible for proportionality review have prompted the extraordinary requirements for precision and written findings. But we have gone too far. In an attempt to cure one problem we have caused another—not, as we have seen, an unusual occurrence in the difficult process of reaching an acceptable middle ground between important but conflicting interests in this area of the law. The process must be as simple and as fair as we can make it. We must be strict in the requirement that no person be considered for the death penalty unless and until there has been a unanimous finding, beyond a reasonable doubt, of the existence of one or more statutory enumerated aggravating circumstances.

---

7. One could argue that there is nothing to stop a jury from writing in as a "catchall" mitigating circumstance that "we unanimiously conclude from a consideration of the aggravating and mitigating circumstances disclosed by the evidence that death is not the appropriate penalty" or words to that effect. The difficulty is that the form and the statute direct the jurors away from, instead of toward that type of determination. In the absence of a specific instruction from the judge informing the jury that they would be permitted to make such an entry if they so found, I have no confidence that the jury could reach that conclusion on its own.

But we must be liberal in allowing the jury to consider evidence of any relevant mitigating circumstance and in allowing every juror to utilize in the ultimate weighing process every mitigating circumstance proved by a preponderance of the evidence satisfactory to that juror. If any individual juror is not persuaded of the existence of any relevant mitigating circumstance, there will of course be no weighing of circumstances, and the verdict will either be death, or the jurors will be unable to agree. However, if all twelve jurors believe there are mitigating circumstances, the ultimate weighing process must be allowed to take place.

To briefly summarize the foregoing discussion, I conclude as follows. First, that the statute requires and the Legislature intended to require as a condition precedent to the consideration of any aggravating or mitigating circumstance, the unanimous agreement of the jurors as to the *existence* of that circumstance. Second, that the statute does not require, nor did the Legislature intend to require, any finding by the jury that a particular circumstance *does not exist*, either unanimously or otherwise. Third, that because of the imposition of an artificial and wholly unnecessary requirement of unanimity as to *each* mitigating circumstance, the statute unconstitutionally precludes jury consideration of relevant collective mitigating circumstances.

Applying these principles to the case before us persuades me that the sentence of death must be reversed. It is entirely possible, and indeed I suggest very probable, that this jury answered "no" as to certain aggravating and mitigating circumstances because they were not unanimous in their belief that the circumstance had been proven to exist, and not because they unanimously agreed that it did not exist. The trial judge's instructions were entirely consistent with the interpretation of the statute that I believe to have been intended by the Legislature. After referring to the sentencing form that had been distributed to the jurors, and discussing the requirement of unanimity with

respect to a finding of the existence of aggravating circumstances, the trial judge said:

> Let me, before we begin the enumeration of the items of aggravating circumstances, remind you that in order to answer any of those questions yes you must be unanimously satisfied beyond a reasonable doubt of the existence of one of those aggravating circumstances.

The judge then defined the burden of persuasion, and said:

> If, after consideration and comparison of the evidence you have heard this morning, you cannot find an abiding conviction to a moral certainty of the existence of an aggravating circumstance, then reasonable doubt does exist and you must answer no.

The trial judge then pointed out that the State had given notice only as to aggravating circumstance number two, and he said:

> Now in considering these matters, you must consider whether aggravating circumstance number two has been proven beyond a reasonable doubt. If you unanimously conclude that it has been so proven, you should answer that question yes. If you are not so satisfied, *then of course you must answer no.* (emphasis added).

Concerning the requirement of unanimity with respect to the existence of mitigating circumstances, the trial judge instructed in the language of the form that was before the jury.

If, as I suspect, the jury followed logic and the trial judge's instructions rather than the strained interpretation of the meaning of a "no" vote put forth by the majority, it follows that a number of the jurors may have been persuaded of the existence of certain mitigating circumstances, but agreed to marking them "no" because the jury did not unanimously find their existence. Moreover, because the trial judge instructed in accordance with the statute, there was no opportunity for the jurors to incorporate within the "catchall" section any individual judgments they may have

reached concerning the enumerated mitigating circumstances. Judge Sharer instructed them:

> Now number eight indicates, other mitigating circumstances exist as set forth below. Should you find any *other* mitigating circumstances *not specifically enumerated in the first seven* that we have just reviewed which have been raised by the evidence and proved to you by a preponderance of that evidence you may so indicate. . . .
> If you find no other mitigating circumstances then you make no entry upon those lines under number eight. (emphasis added).

The jury unanimously found one aggravating circumstance to exist, but was unable to agree unanimously on the existence of any particular mitigating circumstance.[8]

Thus, the hypothetical posed by Appellant comes to life. This jury was precluded from a consideration of mitigating circumstances that should have been permitted. It was precluded from engaging in any weighing of aggravating and mitigating factors by the draconian instruction that "if Section II was completed and all of the answers were marked "no" then enter "Death."

The majority's conclusion that when the jury answers "no" it means that every juror agrees that the circumstance in question does not exist (or perhaps more precisely, that every juror agrees the circumstance has not been proven to exist by the requisite standard of persuasion) solves the problem of mandatoriness—if every answer with respect to mitigating circumstances is "no" there cannot be a single juror who believes that a single mitigating circumstance exists. But this poses another problem. If "yes" means all jurors agree that the circumstance does exist, and "no" means all jurors agree that the circumstance does not exist,

---

**8.** The possibility that the jury could have fashioned some type of collective mitigating circumstance under the "catchall" provision was further diminished by the trial judge's instruction that if the jurors found any "other" mitigating circumstances, they "must write them in the space provided and number them so that they may be distinguished one from the other."

what is to happen when there is disagreement? According to the interpretation I favor, if the disagreement cannot be resolved the circumstance has not been unanimously proven and the jury marks "no" and moves on. But according to the majority, the jury could not answer "yes" or "no," and it would seem the result would be a mistrial. Given the number of aggravating and mitigating circumstances that may be considered, and the improbability that twelve persons could unanimously agree as to the existence or non-existence of each, the likelihood of a mistrial under that interpretation would be quite high. To avoid that result, which I agree would be unfortunate, the majority simply announces that when the jurors disagree, they do not answer "yes" or "no" but rather leave the answer blank and proceed to the next question.

Apart from the fact that this holding appears out of the blue after nearly ten years of extensive litigation involving this statute [9], it is inconsistent with the majority's basic premise that the existence or non-existence of aggravating and mitigating circumstances are *ultimate* facts requiring unanimity for resolution, and without the resolution of which a mistrial must be declared. I quote from the majority, at 60:

> [T]he presence *or absence* of aggravating and mitigating circumstances, and the weighing of aggravating against mitigating circumstances, all fall into the category of "ultimate issues."

> \* \* \* \* \* \*

> The cases regularly point out that unanimity is required for a jury determination on either side of an issue, . . . and that the failure to achieve unanimity on either side of an issue ordinarily results in a hung jury.

---

**9.** I have examined the sentencing forms that were completed in twenty-five previous capital cases in which the death penalty was imposed and I have not found a single instance in which the answer as to the existence of aggravating or mitigating circumstances was left blank.

One cannot simultaneously run with the hare and hunt with the hounds. Either a mitigating circumstance is an ultimate fact requiring unanimous concurrence as to existence before it can be considered, or it is a predicate or historic fact not saddled with the requirement of unanimity as to its existence.

Although we are poles apart in analysis, the majority and I are in essential agreement as to the basic principles of law that control in a capital sentencing proceeding. An aggravating circumstance can be found to exist only by unanimous agreement of the jury, and no aggravating circumstance may be considered unless it has been found to exist. A mitigating circumstance, on the other hand, must be considered by each juror who believes it to have been proven to exist, irrespective of whether all jurors agree that it exists. Where any individual juror believes a mitigating circumstance exists, that juror must consider that circumstance whether or not it appears on the sentencing form in any of the eight categories. Where one or more aggravating circumstances have unanimously been proven to exist, each juror who believes a mitigating circumstance exists must weigh the aggravating against the mitigating circumstances, and may not vote for death unless persuaded that the aggravating outweigh the mitigating.

I would vacate the sentence of death, however, because the jury in this case was not informed, by instruction or by the sentencing form, of the interpretation of the statute announced for the first time today. The jurors may well have believed their answer of "no" meant that they could not unanimously agree that a mitigating circumstance had been proven. Never were they told that if they disagreed, they could leave the answer blank and proceed. Instead, they were told that "[y]ou must answer yes or no as to each of those circumstances."

I need not address the question of whether our death penalty statute, as rewritten by this Court in this case and in *Foster v. State,* 304 Md. 439, 499 A.2d 1236 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986),

may be constitutionally applied. Trial judges would do well, however, to instruct in accordance with the principles developed by the cases, and avoid instructing in the literal language of the statute. Additionally, this Court should promptly revise Rule 4–343 to correct the sentencing determination form.

I would affirm the conviction, but vacate the sentence of death and remand the case for a new sentencing proceeding.